Thy B. Bui (SBN 256383)
tbui@maynardnexsen.com
Weixuan Cai (SBN 320183)
wcai@maynardnexsen.com
**MAYNARD NEXSEN LLP**
2121 Avenue of the Stars, Suite 650
Los Angeles, CA 90067
Telephone: 310-596-4500

Attorneys for Defendants
SYSCO CORPORATION and
EDWARD DON & COMPANY, LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MICHAEL SCHEIMAN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>EDWARD DON & COMPANY, LLC, and SYSCO CORPORATION,<br><br>Defendants. | Case No. 3:26-cv-00220-TSH<br><br>**DEFENDANT EDWARD DON & COMPANY, LLC'S ANSWER AND COUNTERCLAIM TO PLAINTIFF MICHAEL SCHEIMAN'S FIRST AMENDED COMPLAINT**<br><br>Complaint Filed: October 15, 2025<br>First Am. Compl.: December 9, 2025<br>Removal Date: January 8, 2026<br>Trial Date: July 26, 2027 |
| EDWARD DON & COMPANY, LLC,<br><br>Cross-Complainant,<br><br>vs.<br><br>MICHAEL SCHEIMAN, an individual,<br><br>Cross-Defendant. | |

Defendant Edward Don & Company, LLC hereby answers the First Amended Complaint ("FAC") of Plaintiff Michael Scheiman generally and specifically denying each of the allegations therein as follows:

AS TO INTRODUCTION

1. As to Paragraph 1, Edward Don admits in part the allegation that states "Plaintiff Michael Scheiman ("Plaintiff") brings this action to recover earned but unpaid wages in the form of sales commissions from his former employer, Edward Don & Company." Edward Don further admits that it is "under the ownership of Sysco Corporation." However, Edward Don lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegation starting with "Defendants' [failed] to timely provide his personnel records." In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

2. As to Paragraph 2, Edward Don admits the allegation in-part in that Plaintiff was employed with Edward Don as a Myers VP Business Development & Design at Edward Don's Alameda location from December 18, 2022 until his resignation on December 20, 2024. Edward Don admits the allegation in that Plaintiff was a "sales executive, creating client-specific designs which generated design fee revenue and facilitated subsequent equipment sales.". Edward Don denies the allegation that Plaintiff's employment with Edward Don ended on December 23, 2024. In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

3. As to Paragraph 3, Edward Don admits the allegation in part in that, subject to the Salesperson's Agreement and Addendum to Salesperson's Agreement, Plaintiff was eligible for a "10% direct margin for design revenue only," and a "20% direct margin for all equipment sales generated under [his] sales number." Edward Don further denies any characterization of these terms inconsistent with the express text of the Agreement, which speaks for itself and controls. Edward Don denies the remaining allegations set forth therein.

/ / /

4. As to Paragraph 4, Edward Don lacks knowledge or information sufficient to form a belief about the truth of the allegation and therefore is unable to admit or deny this allegation.

5. As to Paragraph 5, Edward Don lacks knowledge or information sufficient to form a belief about the truth of the allegation stating that "Plaintiff earned substantial commissions from major projects, design fees, and vendor programs." In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

6. As to Paragraph 6, Edward Don denies this allegation as Plaintiff voluntarily resigned from his position on December 20, 2024. In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation because Sysco Corporation did not employ Plaintiff.

7. As to Paragraph 7, Edward Don admits this allegation in part in that the Salesperson's Agreement provides "commissions shall be accrued on any commission bearing orders which are received and accepted by [Edward Don] prior to the effective date of termination, and which are shipped no later than 60 days after the effective date of termination." The Salesperson's Agreement further provides that Edward Don "shall have the right to refrain from paying any commissions otherwise payable to [Plaintiff] after any termination of this Agreement until a final reconciliation is performed one hundred twenty (120) days after the effective date of termination." Edward Don further denies this allegation in part as to the remainder of the allegations that directly conflict with the quoted language from the Salesperson Agreement above. Edward Don further denies any characterization of these terms inconsistent with the express text of the Agreement, which speaks for itself and controls.

8. As to Paragraph 8, Edward Don denies the allegation that states "Defendants continue to knowingly withhold these earned commissions and refuse to pay Plaintiff, despite the expiration of the 120-day reconciliation period." Further, Edward Don lacks knowledge or information sufficient to form a belief about the truth of the allegation that states "Plaintiff generated $359,000 in design fee and equipment sales commissions on orders received before his

termination and shipped within sixty (60) days following his termination" and that "Plaintiff brings this action to recover his unpaid commissions" and therefore is unable to admit or deny these allegations. In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

9. As to Paragraph 9, Edward Don lacks knowledge or information sufficient to form a belief about the truth of the allegation and therefore is unable to admit or deny this allegation. In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation because Sysco Corporation did not employ Plaintiff.

10. As to Paragraph 10, Edward Don admits the allegation in part in that failure to provide Plaintiff's personnel records is a violation of the California Labor Code. In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation because Sysco Corporation did not employ Plaintiff.

11. As to Paragraph 11, Edward Don admits this allegation in part in that Plaintiff is seeking to recover his unpaid commissions, interest, statutory penalties, attorney's fees and costs, and all other relief provided by law. However, Edward Don lacks sufficient knowledge or information sufficient to form a belief about the truth of the allegation and therefore is unable to admit or deny the same.

## AS TO JURISDICTION AND VENUE

12. As to Paragraph 12, Edward Don admits this allegation in part in that it is a Delaware limited liability company headquartered in Woodridge, Illinois, and authorized to do business in the State of California and that it is subject to the jurisdiction of California courts and the application of California law. Edward Don denies the remaining allegations.

13. As to Paragraph 13, Edward Don admits in part the allegation that Sysco is incorporated in the State of Delaware and that its headquarters are in Houston, Texas, and that it acquired Edward Don in October 2023. Edward Don lacks knowledge or information sufficient to form a belief about the truth of the allegation that states "Sysco maintains continuous and systematic business contacts with California, including employing personnel, maintaining client

accounts, and deriving substantial revenue from its California operations," and that "Sysco is therefore subject to the jurisdiction of California courts and the application of California law."

14. As to Paragraph 14, Edward Don denies this allegation because the matter was removed to the United States District Court for the Northern District of California on January 8, 2026.

15. As to Paragraph 15, Edward Don denies this allegation because the matter was removed to the United States District Court for the Northern District of California on January 8, 2026.

AS TO PARTIES

16. As to Paragraph 16, Edward Don denies in part that Plaintiff was an employee of Sysco. Edward Don admits in part that Plaintiff was an employee of Edward Don. As to Plaintiff's allegation that he resides in Oakland, California, Edward Don, lacks knowledge or information sufficient to form a belief about the truth of the allegation and therefore is unable to admit or deny this allegation. In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation because Sysco Corporation did not employ Plaintiff.

17. As to Paragraph 17, Edward Don admits the allegations contained therein.

18. As to Paragraph 18, Edward Don admits the allegations contained therein.

AS TO STATEMENT OF FACTS

19. As to Paragraph 19, Edward Don admits in part that Plaintiff began his employment with Myers Restaurant Supply, LLC on May 28, 2013, as Director of Construction and Development for MRS, LLC and Mise En Place. Edward Don lacks knowledge or information sufficient to form a belief about the truth of the remaining allegation and therefore is unable to admit or deny same. In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

20. As to Paragraph 20, Edward Don admits the allegations therein. .

21. As to Paragraph 21, Edward Don lacks knowledge or information sufficient to form a belief about the truth of the allegation that Plaintiff became Vice President of Business Development and Design in 2018 as Edward Don did not employ Plaintiff at that time. Edward Don admits this allegation in part in that Plaintiff became Myers Vice President of Business Development and Design on December 18, 2022. Edward Don further admits the allegation in part that Plaintiff received the Don Bell Ringers award in 2023.. Edward Don lacks knowledge or information sufficient to form a belief about the truth of the remaining allegation and therefore is unable to admit or deny the same.

22. As to Paragraph 22, Edward Don admits this allegation in part in that the Salesperson's Agreement and Addendum is based on the following commission structure: "20% direct margin for all equipment sales generated under his sales number, 10% direct margin for design revenue only, 5% override for all direct margin created by Bob Mathis and Jacob Thomases." However, Edward Don denies this allegation in part as to the remainder of the allegations that directly conflict with the quoted language from the Salesperson's Agreement and Addendum above. Edward Don further denies any characterization of these terms inconsistent with the express text of the Agreement, which speaks for itself and controls.

23. As to Paragraph 23, Edward Don denies the allegation in part that states "when clients purchased the recommended equipment, Plaintiff earned an additional 20% commission on the equipment sale revenue." Edward Don admits that "commissions shall not be considered earned or due on any order until all adjustments are made, and full payment has been received by the Company from the customer." Edward Don lacks knowledge or information sufficient to form a belief about the truth of the allegation and therefore is unable to admit or deny same.

24. As to Paragraph 24, Edward Don admits this allegation in part in that Plaintiff's sales draw increased from $250,000 to $325,000 effective October 6, 2024. Edward Don denies that Plaintiff's sales draw increased from $250,000 to $325,000 on October 10, 2024. Edward Don lacks knowledge or information sufficient to form a belief about the truth of the allegation and therefore is unable to admit or deny the same.

25. As to Paragraph 25, Edward Don lacks knowledge or information sufficient to form a belief about the truth of the allegation and therefore is unable to admit or deny the same. Edward Don denies any characterization of these terms inconsistent with the express text of the Agreement, which speaks for itself and controls.

26. As to Paragraph 26, Edward Don denies this allegation in part because Plaintiff voluntarily resigned from his role on December 20, 2024. Edward Don admits this allegation in part in that the 120-reconciliation period provided for in the Salesperson Agreement has since expired. However, Edward Don lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and therefore is unable to admit or deny the remaining allegations. In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff. Edward Don denies any characterization of these terms inconsistent with the express text of the Agreement, which speaks for itself and controls.

27. As to Paragraph 27, Edward Don lacks knowledge or information sufficient to form a belief about the truth of the allegation and therefore is unable to admit or deny these allegations. Edward Don denies any characterization of these terms inconsistent with the express text of the Agreement, which speaks for itself and controls.

28. As to Paragraph 28, Edward Don denies the allegation in part because it has not "wrongfully with[held] these commissions despite having the ability and obligation to pay under the clear terms of the agreements." Further, Edward Don lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and therefore is unable to admit or deny the same. In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

29. As to Paragraph 29, Edward Don lacks knowledge or information sufficient to form a belief on which to either admit or deny whether Plaintiff suffered any economic damages. In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

30. As to Paragraph 30, Edward Don admits this allegation in part in that Plaintiff sent his personnel file records request to Ben Stott, former counsel at Sysco on July 11, 2025. Edward Don lacks knowledge or information sufficient to form a belief about the truth of the allegation and therefore is unable to admit or deny the remaining allegations. In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

31. As to Paragraph 31, Edward Don admits this allegation in-part as it pertains to Edward Don. In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

32. As to Paragraph 32, Edward Don admits this allegation in part in that Ben Stott, former counsel at Sysco, received a signed Confidentiality Agreement from Plaintiff's counsel on August 18, 2025. Edward Don denies the allegation in part that states "although not required by law." In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

33. As to Paragraph 33, Edward Don lacks knowledge or information sufficient to form a belief about the truth of the allegation and therefore is unable to admit or deny the same. In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

34. As to Paragraph 34, Edward Don admits this allegation in part in that Plaintiff's counsel checked in on the status of the personnel file request on September 11, 2025. Edward Don lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations. In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

35. As to Paragraph 35, Edward Dondenies the allegations therein. . In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

36. As to Paragraph 36, Edward Don admits in part the allegations therein that Plaintiff's counsel sent a follow-up to Ben Stott, former counsel at Sysco about Plaintiff's personnel records request on September 18, 2025. In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

37. As to Paragraph 37, Edward Don admits in part the allegation that Plaintiff's counsel sent an email to Ben Stott, former counsel at Sysco following up on Plaintiff's personnel records request on October 1, 2025. Edward Don denies that Plaintiff sent "another request for his records" as Ben Stott, former counsel at Sysco did not receive another personnel file request from Plaintiff's counsel. In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

38. As to Paragraph 38, Edward Don admits that Plaintiff's counsel sent an email to Ben Stott, former counsel at Sysco to follow up on Plaintiff's personnel records request on October 2, 2025. Edward Don denies the allegation that states that this was a "final demand." In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

39. As to Paragraph 39, Edward Don admits in part the allegation that Plaintiff filed the instant action for injunctive relief requiring Defendants to provide a copy of Plaintiff's full personnel file and for statutory penalties and attorneys' fees and costs on November 15, 2025. Edward Don denies in part the allegation that Plaintiff filed the instant action on November 16, 2025. In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

40. As to Paragraph 40, Edward Don denies this allegation in part in that Edward Don produced Plaintiff's personnel records which did not include wage and payroll records on November 11, 2025, and that the production was incomplete. In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

41. As to Paragraph 41, Edward Don denies this allegation in part in that it produced additional records to Plaintiff on November 12, 2025. Further, Edward Don denies the remainder of the allegation. In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

AS TO FIRST CAUSE OF ACTION

Withholding of Wages in Violation of California Labor Code

(Cal. Lab. Code § 206)

42. As to Paragraph 42, Edward Don hereby incorporates its responses to Paragraphs 1 through 41, above, as though fully set forth therein.

43. As to Paragraph 43, Edward Don denies this allegation as the law has not been quoted explicitly.

44. As to Paragraph 44, Edward Don denies this allegation as the law has not been quoted explicitly.

45. As to Paragraph 45, Edward Don lacks knowledge or information sufficient to form a belief about the true of this allegation that states "[w]ages must be paid timely by employers even when there is a dispute about the amount owed" and therefore is unable to admit or deny this allegation. In addition, Edward Don admits the remaining allegations.

46. As to Paragraph 46, Edward Don denies this allegation as the law has not been quoted explicitly.

47. As to Paragraph 47, Edward Don denies this allegation as the law has not been quoted explicitly.

48. As to Paragraph 48, Edward Don lacks knowledge or information sufficient to form a belief about the truth of the allegation and therefore is unable to admit or deny this allegation. In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff. Edward Don denies any characterization of these terms inconsistent with the express text of the Agreement, which speaks for itself and controls.

49. As to Paragraph 49, Edward Don lacks knowledge or information sufficient to form a belief about the truth of the allegation and therefore is unable to admit or deny this allegation.

50. As to Paragraph 50, Edward Don denies the allegation. In addition, with respect to Plaintiff's specially defined term "Defendants," Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

AS TO SECOND CAUSE OF ACTION

Breach of Contract

51. As to Paragraph 51, Edward Don hereby incorporates its responses to Paragraphs 1 through 50, above, as though fully set forth therein.

52. As to Paragraph 52, Edward Don admits the allegation in-part as it pertains to Edward Don alleging that Plaintiff and Edward Don entered into the Salesperson's Agreement and Addendum with Plaintiff on December 18, 2022, and that a contractual employment relationship was formed on that date. Edward Don further denies this allegation because Defendant Sysco Corporation was not party to the Salesperson's Agreement and Addendum and therefore did not employe Plaintiff.

53. As to Paragraph 53, Edward Don admits in-part the allegation as it to pertains to Edward Don alleging that Edward Don agreed to pay Plaintiff wages in the form of commissions earned through various sales services provided, as part of his compensation for his labor pursuant to the Salesperson's Agreement. In addition, Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

54. As to Paragraph 54, Edward Don denies the allegations contained therein as the law has not been quoted explicitly.

55. As to Paragraph 55, Edward Don denies that it breached the Salesperson's Agreement and Addendum with Plaintiff, and that it refused to compensate Plaintiff for his labor by withholding his earned commissions. Edward Don further denies the allegation that it has "continued to breach the agreement with each promise to pay remains unfulfilled." In addition,

Edward Don further denies this allegation in part because Sysco Corporation did not employ Plaintiff.

56. As to Paragraph 56, Edward Don lacks knowledge or information sufficient to form a belief about the truth of the allegation and therefore is unable to admit or deny this allegation.

AS TO THE THIRD CAUSE OF ACTION

Unjust Enrichment

57. As to Paragraphs 57, 58, 59, 60, and 61, Edward Don hereby incorporates its responses to Paragraphs 1 through 56, above, as though fully set forth therein. Further, as to Paragraphs 57, 58, 59, 60, and 61, on February 17, 2026, the Court dismissed this cause of action with leave to amend, and Plaintiff has until March 19, 2026 to amend the FAC. (ECF No. 27.) As of the date of filing this Answer, Plaintiff has not amended the FAC. To the extent a response is required, Edward Don generally and specifically denies each and every allegation contained therein. Edward Don reserves the right to file a responsive pleading assuming Plaintiff amends the FAC.

AS TO THE FOURTH CAUSE OF ACTION

Withholding of Wages in Violation of California Fundamental Public Policy

58. As to Paragraph 62, 63, 64, 65, and 66, Edward Don hereby incorporates its responses to Paragraphs 1 through 61, above, as though fully set forth therein. Further, as to Paragraph 62, 63, 64, 65, and 66, on February 17, 2026, the Court dismissed this cause of action, and Plaintiff has until March 19, 2026 to amend the FAC. (ECF No. 27.) As of the date of filing this Answer, Plaintiff has not amended the FAC. To the extent a response is required, Edward Don generally and specifically denies each and every allegation contained therein. Edward Don reserves the right to file a responsive pleading assuming Plaintiff amends the FAC.

AS TO THE FIFTH CAUSE OF ACTION

Failure to Timely Provide Payroll Records

(Cal. Lab. Code § 226)

59. As to Paragraph 67, Edward Don hereby incorporates its responses to Paragraphs 1 through 56, above, as though fully set forth therein.

60. As to Paragraph 68, Edward Don denies this allegation as the law has not been quoted explicitly.

61. As to Paragraph 69, Edward Don denies this allegation as the law has not been quoted explicitly.

62. As to Paragraph 70, Edward Don admits the allegations therein.

63. As to Paragraph 71, Edward Don admits the allegations therein. Further, with respect to Plaintiff's specially defined term "Defendants," Edward Don lacks knowledge or information sufficient to form a belief about the truth of any allegations pertaining to Sysco Corporation.

64. As to Paragraph 72, Edward Don lacks knowledge or information sufficient to form a belief about the truth of the allegation and therefore is unable to admit or deny this allegation.

## AS TO SIXTH CAUSE OF ACTION

Failure to Timely Provide Personnel File

(Cal. Lab. Code § 1198.5)

65. As to Paragraph 73, Edward Don hereby incorporates its responses to Paragraphs 1 through 72, above, as though fully set forth therein.

66. As to Paragraph 74, Edward Don denies this allegation as the law has not been quoted explicitly.

67. As to Paragraph 75, Edward Don admits the allegations therein.

68. As to Paragraph 76, Edward Don admits the allegations therein.

69. As to Paragraph 77, Edward Don lacks knowledge or information sufficient to form a belief about the truth of the allegation and therefore is unable to admit or deny this allegation.

## AS TO DEMAND FOR RELIEF

In response to Plaintiff's Prayer for Relief, Edward Don denies that Plaintiff is entitled to the requested relief from Edward Don, or to any relief whatsoever from Edward Don, and requests that Plaintiff's claims must be dismissed with prejudice and that the Court should order Plaintiff to pay Edward Don's attorneys' fees and costs.

## EDWARD DON'S AFFIRMATIVE DEFENSES

Edward Don alleges the following separate affirmative defenses, without assuming the burden of proof on matters which it would not otherwise be obligated to prove at any trial of this matter:

### FIRST AFFIRMATIVE DEFENSE

(Failure to State a Claim)

1. The FAC, and each and every purported cause of action alleged therein, fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

(Statute of Limitations)

2. The FAC, and each and every purported cause of action alleged herein is barred by the applicable statute of limitations, including but not limited to, sections 337(a), 338(a), and 340(a) of the California Code of Civil Procedure.

### THIRD AFFIRMATIVE DEFENSE

(At-Will Employment)

3. Plaintiff's employment was at will and could therefore be terminated with or without notice and with or without cause at any time pursuant to section 2922 of the California Labor Code.

### FOURTH AFFIRMATIVE DEFENSE

(Breach of Contract Claims and Damages Contractually Precluded)

4. Plaintiff may not recover any damages or remedy against Edward Don under his Breach of Contract claim because the damages and/or remedies are precluded by provisions in the Salesperson's Agreement and Commission Plan Addendum, including but not limited to the following: (a) Commissions Not Earned Under the Agreement; (b) Post-Termination

Commission Conditions; (c) Reconciliation, Adjustments, and Chargebacks; (d) Entire Agreement / Integration Clause; and (e) Compensation Cessation Upon Termination. Plaintiff's employment ended on or about December 20, 2024, and his entitlement to any commissions, draws, or other compensation is governed and limited by the express terms of the Agreement.

FIFTH AFFIRMATIVE DEFENSE

(Double Recovery)

5. If Plaintiff prevails on all of his claims against Sysco and Edward Don, he is barred from recovering the same damages for all the claims against Edward Don because the claims are based on the same facts and would result in Plaintiff recovering twice for the same loss.

SIXTH AFFIRMATIVE DEFENSE

(Unclean Hands)

6. The FAC, and each and every purported cause of action alleged therein, is barred by the doctrine of unclean hands.

SEVENTH AFFIRMATIVE DEFENSE

(Laches)

7. The FAC, and each and every purported cause of action alleged therein, is barred by the doctrine of laches.

EIGHTH AFFIRMATIVE DEFENSE

(Estoppel)

8. The FAC, and each and every purported cause of action alleged therein, is barred by the doctrine of estoppel.

NINTH AFFIRMATIVE DEFENSE

(No Authorization or Ratification)

9. Any unlawful or wrongful acts, if any there were, taken by Edward Don's agents or employees were outside the course and scope of their authority and such acts, if any, were not authorized, ratified, or condoned by Edward Don, nor did Edward Don know nor should have known of such acts.

TENTH AFFIRMATIVE DEFENSE

(Failure to Mitigate Damages)

10. Plaintiff has failed to mitigate his damages, if in fact he had any. Accordingly, any damages otherwise awardable to Plaintiff should be reduced by the amounts by which he could have mitigated damages but did not do so.

ELEVENTH AFFIRMATIVE DEFENSE

(Unjust Enrichment)

11. Edward Don alleges that Plaintiff is seeking to recover more than he is entitled to recover in this case, and an award of the judgment sought by Plaintiff would unjustly enrich him.

TWELFTH AFFIRMATIVE DEFENSE

(De Minimis)

12. Plaintiff may not recover penalties or damages related to some or all of the disputed unpaid time allegedly worked to the extent such time is/was de minimis and thus not compensable as a matter of law.

THIRTEENTH AFFIRMATIVE DEFENSE

(No Wages Owed and/or Due)

13. To the extent Plaintiff alleges that Edward Don employed him, Edward Don alleges that it paid Plaintiff all wages owed and due based on the hours Plaintiff reported; therefore, Plaintiff is barred from seeking to recover any further amounts and penalties on such amounts.

FOURTEENTH AFFIRMATIVE DEFENSE

(Good Faith Defense (Liquidated Damages))

14. Edward Don acted in good faith and alleges that it paid Plaintiff all wages owed and due based on the hours Plaintiff reported and had reasonable grounds to believe its actions did not violate the labor code. For that reason, Plaintiff is barred from seeking any monetary penalty against Edward Don.

FIFTEENTH AFFIRMATIVE DEFENSE

(Waiver)

15. Edward Don alleges that Plaintiff has waived the right, by reason of his own conduct and actions, to assert the claims alleged in his FAC.

SIXTEENTH AFFIRMATIVE DEFENSE

(Recoupment/Setoff)

16. Plaintiff's alleged damages must be reduced or offset by amounts owed to Edward Don arising from the same Salesperson's Agreement and Commission Plan Addendum that forms the basis of Plaintiff's claims, including without limitation: (i) unearned draw advances paid to Plaintiff that exceeded commissions earned at the time of separation; (ii) chargebacks, returns, and adjustments arising from orders on which Plaintiff claims commissions; (iii) reconciliation adjustments pursuant to the 120-day reconciliation period provided in the Agreement; and (iv) any other amounts Plaintiff received in excess of what was earned under the Agreement.

SEVENTEENTH AFFIRMATIVE DEFENSE

(Failure to Serve Personnel and Payroll Records Requests on Designated Person)

17. Plaintiff's cause of action for failure to produce personnel records under Section 1198.5 and payroll records under Section 226 of the Labor Code fails because Plaintiff failed to submit his personnel and wage records requests pursuant to the designated person at Edward Don authorized to accept such requests as permitted by Sections 1198.5(f) and (j) and 226(c).

EIGHTEENTH AFFIRMATIVE DEFENSE

(Lack of Proper Written Authorization)

18. Plaintiff has failed to include the proper written authorization to release his personnel records request pursuant to California Labor Code § 1198.5.

NINETEENTH AFFIRMATIVE DEFENSE

(Impossibility of Performance)

19. Plaintiff's cause of action for failure to produce personnel records under Section 1198.5 and payroll records under Section 226 of the Labor Code fails because Plaintiff failed to submit his personnel and wage records requests pursuant to the designated person at Edward Don authorized to accept such requests as permitted by Sections 1198.5(f) and (j) and 226(c).

TWENTIETH AFFIRMATIVE DEFENSE

(Reservation of Rights)

20. Edward Don alleges that it has not knowingly or intentionally waived any applicable affirmative defenses and reserves the right to assert and rely on such other applicable affirmative defenses as may later become available or apparent. Edward Don further reserves the right to amend this Answer and/or affirmative defenses accordingly and/or delete affirmative defenses Edward Don later determines are not applicable during the course of subsequent discovery. Nothing stated herein constitutes a concession as to whether or not Plaintiff bears the burden of proof on any issue.

## DEFENDANT EDWARD DON AND COMPANY, LLC'S COUNTERCLAIM AGAINST CROSS-DEFENDANT MICHAEL SCHEIMAN

## PARTIES

1. Cross-Complainant EDWARD DON & COMPANY, LLC ("Edward Don" or "Cross-Complainant") is a Delaware limited liability company with its principal place of business at 9801 Adam Don Parkway, Woodridge, Illinois 60517. Edward Don is engaged in the business of foodservice equipment supply, design, procurement, project management, and installation services, and conducts substantial business throughout the State of California, including in the Northern District of California.

2. Cross-Defendant MICHAEL SCHEIMAN ("Scheiman" or "Cross-Defendant") is an individual who, upon information and belief, resides and/or conducts business in Oakland, California. Scheiman worked for Myers Restaurant Supply/MFSD+B beginning in 2013, became Vice President, Business Development & Design, later became employed by Edward Don as Myers VP Business Development & Design effective December 18, 2022, and after leaving Edward Don became affiliated with The Sam Tell Companies, a competitor of Edward Don, where he holds the title of Managing Director.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this Cross-Complaint pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because the claims herein arise in part under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 et seq. ("DTSA").

4. This Court has supplemental jurisdiction over Edward Don's state-law claims pursuant to 28 U.S.C. § 1367 because such claims arise from the same nucleus of operative facts as the federal trade secret claims and form part of the same case or controversy.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including Scheiman's misappropriation of Edward Don's confidential information relating to a commercial foodservice equipment project in San Francisco, California (the "Project").

6. Personal jurisdiction over Scheiman is proper because, upon information and belief, Scheiman resides and conducts business in California, committed the tortious acts alleged herein in California, and has sufficient minimum contacts with California to satisfy the requirements of due process.

## FACTUAL BACKGROUND

### A. Edward Don's Business and the Project

7. Edward Don is a leading foodservice equipment and supply company that provides design, specification, procurement, project management, and installation services to commercial food and beverage operations throughout the United States, including in California.

8. At least as early as April 2024, while Scheiman remained employed by Edward Don or its related business unit, Edward Don was working on what became the Project, a commercial foodservice equipment project for a customer and developer in San Francisco, California. During that period, the Project's installation approach and installer selection changed over time. Edward Don also prepared and revised confidential project drawings, equipment schedules, and foodservice design materials for the Project.

9. Edward Don's proprietary foodservice design drawings for the Project bear a copyright and confidentiality notice stating that the document and the information disclosed therein are the exclusive copyrighted property of Edward Don & Company, are instruments of service for the project only, and may not be made available, copied, reproduced, or distributed to others without Edward Don's written consent. The Project drawings also identify Scheiman in the project title

block, supporting his involvement in the Project while associated with Edward Don's design/build business.

10. Edward Don invested substantial time, resources, and expertise in the Project, including numerous project revisions over the year preceding February 2025, repeated requests for specification credits, confidential design and equipment materials, confidential internal bid comparison materials reflecting project scope, cost categories, and bid strategy, and carefully developed strategic pricing and margin analyses. Edward Don addressed specification credits, fabrication and installation pricing, installer changes, staging and delivery considerations, project-management fees, and cost-basis issues before resubmitting pricing. These project-specific variables are inputs that drive pricing, substitutions, value engineering, vendor selection, and bid strategy.

11. The total project value was a substantial six-figure amount, consisting of separate tenant equipment and landlord equipment package components.

**B. Scheiman's Relationship with Edward Don**

12. Scheiman began working with Myers Restaurant Supply/MFSD+B effective May 24, 2013, held leadership responsibilities in business development and design, and later became Edward Don's Myers VP Business Development & Design at the Alameda/Oakland location, effective December 18, 2022. Scheiman left Edward Don on or about December 20, 2024.

13. In connection with his employment and leadership role, Scheiman had access by role to Edward Don's proprietary project information and materials, including but not limited to: (a) customer and client lists and relationships; (b) project specifications and customer requirements; (c) proprietary foodservice design materials and related technical files; (d) equipment schedules, specifications, and procurement data; (e) utility-routing, access, anticipated equipment-change, and responsibility-allocation information; (f) internal project communications and revision history; and (g) Edward Don systems and materials

from which project pricing, margin, quote, and cost information could be developed. The Company maintains proprietary information regarding its commission system, pricing formulas, sales programs, customer lists, and customer buying patterns, needs, and inventory levels, which is provided to sales personnel for business purposes.

14. In addition to project-specific materials, Scheiman had access to and participated in Edward Don's broader design/build pricing and competitive strategy. As Vice President of Sales for Design Build and/or the senior design/build leader for the relevant office, he was a point person for receiving project information and making pricing and pursuit decisions based on Edward Don's dealer pricing, vendor pricing, discounts, alternatives, lead times, and related deal information. He also participated in internal meetings and strategy discussions, received training concerning Edward Don's pricing and sales practices, supervised sales personnel who reported to him, and helped create and execute the office's internal processes.

15. Scheiman therefore had access to Confidential Information to a greater degree than ordinary sales personnel, including Edward Don's confidential competitive strategy—its discounting practices and other leverage points, vendor and supplier relationships, installation and project-management capabilities, value-engineering practices, and methods for using relationship and cost information to compete against other bidders.

16. Scheiman also learned and developed Edward Don's confidential value-engineering and cost-reduction strategies for assessing specified components, substitution opportunities, lead-time considerations, and alternative sourcing to reduce costs and compete for projects.

17. Scheiman's obligations to Edward Don included express contractual and policy-based duties. Specifically, Scheiman agreed not to disclose, furnish, make available, or use Edward Don's proprietary information during or after

employment except in the proper performance of his duties, and agreed that the price lists, sales manuals, customer lists, emails, quotes, invoices, computers, and related materials remained Edward Don property and must be returned immediately at termination with no copies retained, among others. Scheiman also acknowledged receipt of the Associate Handbook and signed Standards of Conduct materials requiring integrity, avoidance of conflicts or apparent conflicts, and compliance with company policies.

**C. Edward Don's Trade Secrets and Confidential Information**

18. Edward Don developed and maintained as trade secrets and confidential proprietary information the following categories of information relating to the Project (collectively, "Confidential Information"):

a. Strategic pricing and margin data, including confidential markup and fee adjustments, specific margin targets, vendor credits, and cost-basis analyses developed through numerous project revisions;

b. Confidential internal bid comparison materials reflecting project scope, cost categories, and bid strategy;

c. Specific cost data, including confidential buyout pricing, custom fabrication and equipment costs, staging and delivery expenses, freight charges, project-management fee information, confidential markup and fee adjustments, and specification credits;

d. Official and revised quote packages containing confidential sell pricing, item-level scope information, project totals, payment terms, and delivery and installation schedules;

e. Proprietary foodservice design materials, including confidential layout, routing, and design specifications;

f. Client relationship information, including the identity and requirements of the customer and developer, Edward Don's competitive positioning, internal assessments of the likelihood of award, and project

communications; and

g. Edward Don's broader design and build competitive strategy and internal processes, including discounting practices and leverage points, vendor-pricing and dealer-pricing information, value-engineering methods for substituting lower-cost or more available components, installation-team and project-management strategies, lead-time analyses, cost-saving strategies, and methods for leveraging vendor and customer relationships against competitors.

19. Edward Don derived independent economic value from the secrecy of the foregoing Confidential Information because it provided Edward Don with a competitive advantage in bidding for and winning the Project. Disclosure or use of such information by a competitor would enable the competitor to reduce uncertainty, reconstruct the Project scope more quickly, identify cost-sensitive design and access issues, select sourcing and substitution strategies more efficiently, undercut or benchmark Edward Don's pricing, replicate Edward Don's design work without comparable investment, and misappropriate Edward Don's client relationships.

20. Edward Don took reasonable measures to maintain the secrecy of its Confidential Information, including but not limited to: restricting access to authorized personnel; marking proprietary drawings with copyright and confidentiality notices; maintaining the Sales Procedures Handbook as "Confidential and Proprietary–Do Not Distribute"; requiring employees to acknowledge and follow the Associate Handbook and Standards of Conduct; communicating bid strategies and pricing information through internal channels; and requiring Scheiman by written agreement to maintain proprietary information in confidence, return company materials at termination, retain no copies, and avoid unauthorized disclosure or use after employment.

**D. Scheiman's Departure and Subsequent Misconduct**

21. Scheiman separated from Edward Don on or about December 20,

2024. Upon information and belief, for several months before his separation, Scheiman was engaged in discussions and negotiations with Sam Tell concerning a move to Sam Tell, including meetings and/or trips connected to Sam Tell's headquarters, and the move was substantially finalized before Scheiman's formal departure from Edward Don. During that same period, and while he still owed Edward Don duties of loyalty and exclusivity, Scheiman coordinated with Sam Tell and recruited, assisted in recruiting, or attempted to recruit PJ Patton, a senior Edward Don construction/project-management employee, and/or other Edward Don employees to leave Edward Don and join Sam Tell. Upon information and belief, Scheiman's recruitment or attempted recruitment of PJ Patton and/or other Edward Don employees was part of a broader plan to move key Oakland office personnel and project knowledge to Sam Tell, disrupt Edward Don's Oakland operations, and enable Sam Tell to compete for service projects that Edward Don had developed.

22. Upon information and belief, before his formal departure, Scheiman began acting for Sam Tell's benefit while still on Edward Don's payroll, including by directing or encouraging certain clients or project contacts to delay moving forward with Edward Don and to wait until he began at Sam Tell. Upon information and belief, in connection with his departure from Edward Don, Scheiman took, retained, deleted, concealed, and/or failed to return Edward Don's Confidential Information, including project-specific customer information, equipment and design materials, internal project communications, and proprietary materials relating to the Project and other projects. At the time of his departure, Scheiman deleted the vast majority of his emails and contacts from Edward Don systems, leaving minimal data behind; upon information and belief, the deletions appear targeted rather than routine. Upon information and belief, Scheiman also did not utilize Edward Don's company storage systems during his employment and instead maintained project and business materials through personal systems.

Edward Don further alleges, subject to discovery, that Scheiman accessed, retained, used, or benefited from pricing, margin, quote, and cost information developed from those project materials and internal systems.

23. Within months of leaving Edward Don, Scheiman was actively involved in the same Project through Sam Tell. On April 8, 2025, Scheiman used a Sam Tell "Managing Director" signature block in communications with a project representative regarding equipment and millwork issues, and asked that Sam Tell project personnel be copied so they could provide responses.

24. Scheiman's April 2025 communications concerned the same Project equipment, access, and millwork issues addressed in Edward Don's confidential design and bid materials, including component access, cost impacts, and potential project-change costs. Scheiman's insertion of himself and Sam Tell personnel into these issues supports an inference that he was using project knowledge and client relationships developed through Edward Don's work.

25. In May 2025, Scheiman again acted through Sam Tell on the Project. A vendor representative wrote to Scheiman and Sam Tell personnel after speaking with him, stating that a quote was being prepared using an alternative sourcing pathway, that Sam Tell should be able to purchase through that pathway, and that the alternative was expected to cost less and be available. Scheiman responded by directing the representative to Sam Tell project-management personnel.

26. On May 14 and May 19, 2025, vendor and supplier representatives provided pricing and availability information for certain overlapping beer-system (quick chill system) components and related equipment specifications for the Project. The vendor estimate identified the Project and included components overlapping with Edward Don's Project materials. Edward Don's quote packages likewise included certain overlapping beer-system components and related equipment specifications.

27. Upon information and belief, and subject to discovery, the statement

indicates that Scheiman, Sam Tell, or others had communicated Project specifications, pricing benchmarks, or project requirements sufficient to compare a vendor alternative against existing project pricing, including Edward Don's pricing. The advantage to Sam Tell would not require proof that Scheiman personally participated in Edward Don's February–March 2025 pricing discussions; rather, it could arise from Scheiman's involvement in the Project's design/build development and his access by role to project information and proprietary materials, including equipment schedules, technical routing information, access constraints, anticipated equipment changes, responsibility-allocation information, and revision history. Those inputs could allow a knowledgeable former insider to reduce uncertainty and prepare a competitive bid more quickly, and Edward Don's later pricing and margin information was developed from the same project materials and internal systems to which Scheiman had access.

28. Scheiman knew that Edward Don was heavily involved in and aggressively pursuing the Project, and that Edward Don would not simply concede projects in his backlog or pipeline to Scheiman or Sam Tell. He also knew Edward Don's pricing posture and ability and willingness to make confidential markup and fee adjustments because of his position, training, internal meeting attendance, and direct involvement in project and pricing strategy.

29. Upon information and belief, Scheiman used the same or substantially similar Project kitchen design after moving to Sam Tell. The Project kitchen design was developed while Scheiman was associated with Edward Don, was subject to specific customer and site constraints, and could not be materially changed beyond limited adjustments without changing the Project's essential layout and functionality. The design and related design materials were Edward Don's intellectual property and Confidential Information, and that Scheiman's use of the same or substantially similar design gave him and Sam Tell a material advantage.

30. The advantage Scheiman and Sam Tell obtained included more than knowledge of an individual price. Scheiman's knowledge of Edward Don's confidential pricing, discounts, project strategy, vendor relationships, design materials, value-engineering practices, and internal processes would have enabled Sam Tell to benchmark Edward Don's likely bid, identify where to reduce costs, select alternatives, use lead-time and vendor information strategically, and compete for the Project with materially less uncertainty.

31. Edward Don has also identified additional projects formerly associated with Edward Don's book of business, forecast, client relationships, and/or project pipeline that may have been diverted to Sam Tell or otherwise affected by Scheiman's misconduct. Upon information and belief, these projects include hospitality, foodservice, and commercial kitchen opportunities that Edward Don would have been positioned to service but for Scheiman's disloyal conduct, misuse of confidential project information, and coordination with Sam Tell and/or former Edward Don personnel.

## **CAUSES OF ACTION**

### **FIRST CAUSE OF ACTION**

### **Misappropriation of Trade Secrets — Federal Defend Trade Secrets Act (18 U.S.C. § 1836 et seq.)**

(Against Cross-Defendant Michael Scheiman)

32. Edward Don incorporates by reference the allegations set forth in Paragraphs 1 through 31 above as though fully set forth herein.

33. Edward Don's Confidential Information, as described above, constitutes "trade secrets" within the meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1839(3), because it consists of financial, business, technical, and other information relating to Edward Don's products and services that: (a) Edward Don has taken reasonable measures to keep secret; and (b) derives independent economic value, actual or potential, from not being generally known to, and not

being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

34. Upon information and belief, Scheiman misappropriated Edward Don's trade secrets within the meaning of 18 U.S.C. § 1839(5) by acquiring such trade secrets through improper means—namely, by taking, retaining, and/or using Edward Don's Confidential Information without authorization after the termination of his employment or agency relationship—and by disclosing or using such trade secrets without Edward Don's consent for the benefit of Sam Tell, a competitor.

35. The trade secrets at issue were related to a product or service used in, or intended for use in, interstate or foreign commerce, as Edward Don's foodservice equipment business involves interstate commerce, including procurement from manufacturers across multiple states and service to clients throughout the United States.

36. As a direct and proximate result of Scheiman's misappropriation, Edward Don has been damaged in an amount to be proven at trial, including but not limited to: the loss of the Project, which had a substantial six-figure value; lost profits; the cost of developing its trade secrets; and unjust enrichment to Scheiman and Sam Tell.

37. Scheiman's misappropriation was willful and malicious, entitling Edward Don to exemplary damages of up to twice the amount of actual damages pursuant to 18 U.S.C. § 1836(b)(3)(C), and to reasonable attorney's fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

## SECOND CAUSE OF ACTION

## Misappropriation of Trade Secrets — California Uniform Trade Secrets Act (Cal. Civ. Code § 3426 et seq.)

(Against Cross-Defendant Michael Scheiman)

38. Edward Don incorporates by reference the allegations set forth in Paragraphs 1 through 37 above as though fully set forth herein.

39. Edward Don's Confidential Information constitutes "trade secrets" within the meaning of California Civil Code § 3426.1(d) because it consists of information that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

40. Scheiman misappropriated Edward Don's trade secrets within the meaning of California Civil Code § 3426.1(b) by: (a) acquiring trade secrets by improper means, including breach of a duty to maintain secrecy and/or through unauthorized access or retention; and/or (b) disclosing or using Edward Don's trade secrets without express or implied consent, knowing or having reason to know that his knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain their secrecy.

41. As a direct and proximate result of Scheiman's misappropriation, Edward Don has been damaged in an amount to be proven at trial.

42. Scheiman's misappropriation was willful and malicious, entitling Edward Don to exemplary damages not exceeding twice the amount of actual damages pursuant to California Civil Code § 3426.3(c), and to reasonable attorney's fees pursuant to California Civil Code § 3426.4.

**THIRD CAUSE OF ACTION**

**Breach of Duty of Loyalty**

(Against Cross-Defendant Michael Scheiman)

43. Edward Don incorporates by reference the allegations set forth in Paragraphs 1 through 42 above as though fully set forth herein.

44. At all relevant times during his employment or agency with Edward Don, Scheiman owed Edward Don duties of loyalty, good faith, and confidentiality, including the duty to: (a) devote his working time, attention, and energies exclusively to Edward Don's duties and responsibilities while employed;

(b) refrain from employment by any other person or entity while the Salesperson's Agreement remained in force; (c) act solely in Edward Don's interest with respect to matters within the scope of his employment or agency; (d) refrain from competing with Edward Don or acting adversely to Edward Don's interests; (e) refrain from using or disclosing Edward Don's confidential information for his own benefit or for the benefit of others; and (f) not appropriate for himself or a third party business opportunities belonging to Edward Don.

45. Scheiman breached his duty of loyalty by, among other things: (a) taking, retaining, deleting, concealing, and/or failing to return Edward Don's Confidential Information upon the termination of his employment or agency relationship; (b) using Edward Don's Confidential Information for the benefit of Sam Tell, a direct competitor; (c) inserting himself and Sam Tell into the Project and diverting project communications through Sam Tell personnel; (d) using project-specific knowledge concerning equipment, drawings, technical scope, access constraints, anticipated equipment changes, responsibility allocations, revision history, pricing posture, discounting practices, vendor relationships, value-engineering alternatives, lead-time information, and internal bidding strategy to assist Sam Tell and vendors; (e) while still employed by Edward Don and before his employment ended, coordinating with Sam Tell and recruiting, assisting in recruiting, or attempting to recruit PJ Patton and/or other Edward Don employees to join Sam Tell; (f) engaging in discussions, negotiations, meetings, and/or trips with Sam Tell concerning his own move to Sam Tell while still employed by Edward Don; (g) directing or encouraging clients or project contacts to delay moving forward with Edward Don and instead wait for Scheiman's transition to Sam Tell; and (h) upon information and belief and subject to discovery, using or benefiting from pricing, quote, margin, cost, design, vendor, value-engineering, and cost-saving strategy information developed from Edward Don project materials and internal systems to which he had access.

46. As a direct and proximate result of Scheiman's breach of the duty of loyalty, Edward Don has been damaged in an amount to be proven at trial, including but not limited to the loss of the Project and associated profits.

## FOURTH CAUSE OF ACTION

### Breach of Fiduciary Duty

(Against Cross-Defendant Michael Scheiman)

47. Edward Don incorporates by reference the allegations set forth in Paragraphs 1 through 46 above as though fully set forth herein.

48. By virtue of his role as Vice President, Business Development & Design, his responsibility for developing design/build business, his access to confidential pricing and strategy information, his customer-facing responsibilities, and his contractual undertaking to treat proprietary information as confidential, Scheiman occupied a position of trust and confidence with Edward Don and owed Edward Don fiduciary and fiduciary-like duties, including duties of loyalty, care, good faith, and the duty not to self-deal or divert corporate opportunities.

49. Scheiman breached his fiduciary duties by engaging in the conduct described herein, including misappropriating Edward Don's trade secrets and Confidential Information, deleting, concealing, failing to return, or retaining copies of Edward Don materials at termination, diverting the Project and other opportunities to Sam Tell for his own benefit, coordinating with Sam Tell and recruiting, assisting in recruiting, or attempting to recruit PJ Patton and/or other Edward Don employees for Sam Tell while still employed by Edward Don, directing or encouraging clients or project contacts to delay moving forward with Edward Don, and acting in direct competition with Edward Don using knowledge and assets acquired in his fiduciary or confidential capacity.

50. As a direct and proximate result of Scheiman's breach of fiduciary duty, Edward Don has been damaged in an amount to be proven at trial.

51. Scheiman's conduct was willful, malicious, and in conscious

disregard of Edward Don's rights, entitling Edward Don to an award of punitive and exemplary damages.

**FIFTH CAUSE OF ACTION**

**Conversion**

(Against Cross-Defendant Michael Scheiman)

52. Edward Don incorporates by reference the allegations set forth in Paragraphs 1 through 51 above as though fully set forth herein.

53. Edward Don is the rightful owner of and has possessory and property rights in its Confidential Information, including its proprietary pricing data, bid comparison materials, project cost analyses, customer and project data, official quote packages, emails, contacts, invoices, proprietary foodservice design materials, related technical files, and related project materials. The Salesperson's Agreement provides that all price lists, sales manuals, customer lists, emails, quotes, invoices, computers, and related materials furnished to Scheiman during employment remained Edward Don property and had to be returned immediately at termination with no copies retained.

54. Upon information and belief, Scheiman knowingly and intentionally exercised unauthorized dominion and control over Edward Don's Confidential Information by taking, retaining, copying, and/or using such information without authorization; failing to return all company materials or retain no copies after termination; and making such information available to Sam Tell, vendor representatives, suppliers, and/or other third parties in a manner that substantially interfered with Edward Don's ownership and property rights therein.

55. As a direct and proximate result of Scheiman's conversion, Edward Don has been damaged in an amount to be proven at trial, including the value of the converted information and consequential damages including loss of the Project.

/ / /

/ / /

## SIXTH CAUSE OF ACTION

## Unfair Competition

## (Cal. Bus. & Prof. Code § 17200 et seq.)

(Against Cross-Defendant Michael Scheiman)

56. Edward Don incorporates by reference the allegations set forth in Paragraphs 1 through 55 above as though fully set forth herein.

57. California Business and Professions Code § 17200 defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice.

58. Scheiman's conduct, as described herein, constitutes unlawful business acts and practices because it violates the Defend Trade Secrets Act (18 U.S.C. § 1836 et seq.), the California Uniform Trade Secrets Act (Cal. Civ. Code § 3426 et seq.), and other laws as alleged herein.

59. Scheiman's conduct also constitutes unfair business acts and practices because the harm caused by Scheiman's misappropriation of trade secrets, breach of loyalty, diversion of business opportunities, recruitment, assistance in recruiting, or attempted recruitment of PJ Patton and/or other Edward Don personnel for a competitor while still employed by Edward Don, predeparture work with Sam Tell, and alleged direction to clients or project contacts to delay moving forward with Edward Don substantially outweighs any legitimate business justification, and such conduct offends established public policy favoring fair competition, employee loyalty during employment, and the protection of confidential business relationships.

60. As a direct and proximate result of Scheiman's unfair competition, Edward Don has suffered injury in fact and lost money or property, including the loss of the Project and the value of its misappropriated Confidential Information.

61. Edward Don is entitled to restitution and injunctive relief to prevent Scheiman from continuing to engage in the unfair competitive practices alleged herein.

**SEVENTH CAUSE OF ACTION**

**Intentional Interference with Prospective Economic Advantage**

(Against Cross-Defendant Michael Scheiman)

62. Edward Don incorporates by reference the allegations set forth in Paragraphs 1 through 61 above as though fully set forth herein.

63. Edward Don had an existing economic relationship and reasonably probable prospective economic relationship with the customer and developer with respect to the Project. As of February and March 2025, Edward Don had submitted official customer and developer quotes for the Project, the developer had requested updated pricing in connection with an anticipated award decision, and communications reflected urgency and a reasonably probable future economic benefit to Edward Don.

64. Scheiman knew of Edward Don's economic relationship and prospective advantage with respect to the Project because, while employed in business development and design, he was involved in the Project's design/build development and had access by role to Edward Don's project information, customer information, design materials, equipment schedules, technical routing information, access constraints, anticipated equipment changes, responsibility-allocation information, revision history, pricing posture, discounting practices, ability and willingness to make confidential markup and fee adjustments, vendor relationships, value-engineering practices, and internal systems. The Project design drawings identify him in the project title block, and Edward Don's later pricing and margin information was developed from the same project materials and internal systems to which he had access, subject to discovery on whether he accessed or retained the specific pricing files.

65. Scheiman intentionally engaged in wrongful conduct designed to interfere with and disrupt Edward Don's prospective economic advantage, including: (a) using Edward Don's misappropriated Confidential Information and

competitive strategy to enable Sam Tell to compete on the Project; (b) inserting himself and Sam Tell into Edward Don's existing client relationships on the Project; (c) directing project communications through Sam Tell personnel; (d) participating in efforts to quote and procure certain overlapping beer-system components and related equipment specifications through vendor and supplier channels; (e) using the same or substantially similar Project design, value-engineering strategy, vendor knowledge, lead-time information, and cost-saving alternatives developed through Edward Don's work; (f) before his formal departure, directing or encouraging clients or project contacts to delay moving forward with Edward Don and instead wait for Scheiman's transition to Sam Tell; and (g) diverting the Project and other opportunities from Edward Don to Sam Tell.

66. Scheiman's conduct was independently wrongful, constituting misappropriation of trade secrets, breach of the duty of loyalty, breach of fiduciary duty, and unfair competition, as alleged herein.

67. As a direct and proximate result of Scheiman's intentional interference, Edward Don's prospective economic relationship with the customer and developer was disrupted, and Edward Don lost or was placed at substantial risk of losing the Project and associated profits, in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

### Breach of Contract / Confidentiality and Non-Disclosure Obligations

(Against Cross-Defendant Michael Scheiman)

68. Edward Don incorporates by reference the allegations set forth in Paragraphs 1 through 67 above as though fully set forth herein.

69. Scheiman was bound by express confidentiality, non-disclosure, return-of-property, and competition-notice obligations to Edward Don, including under the December 15, 2022 Salesperson's Agreement, the Salesperson's Agreement Addendum, the Associate Handbook acknowledgment, and the

Standards of Conduct acknowledgment. Scheiman also executed a California Agreement Regarding Trade Secrets and Confidential Information with MRS Restaurant Supply, LLC, Edward Don's predecessor/related business unit, which recognized confidential information concerning operations, designs, customers, individual customer data, customer and prospective customer lists, suppliers, vendors, special pricing, customer requirements, customer history, individual contact information, and current and prospective plans, and required non-disclosure during and after employment.

70. Scheiman breached those obligations by using, disclosing, furnishing, making available, retaining, and/or failing to return Edward Don's Confidential Information, including project emails, quotes, pricing, customer and project data, bid strategy, equipment specifications, technical scope, design materials, vendor-pricing and dealer-pricing information, discounting practices, lead-time information, value-engineering strategies, cost-saving alternatives, and internal processes, and by using that information or its fruits for the benefit of Sam Tell and other third parties on the Project.

71. As a direct and proximate result of Scheiman's breach, Edward Don has been damaged in an amount to be proven at trial and is entitled to all contractual and equitable remedies available under the Salesperson's Agreement, including immediate injunctive relief and other equitable relief for actual or threatened breach of the proprietary-information covenants, as well as damages and other remedies available at law.

**PRAYER FOR RELIEF**

WHEREFORE, Cross-Complainant Edward Don & Company, LLC prays for judgment against Cross-Defendant Michael Scheiman as follows:

1. For compensatory damages in an amount to be proven at trial, including but not limited to lost profits, the substantial six-figure value of the Project, and the value of the misappropriated trade secrets and Confidential

Information;

2. For exemplary damages of up to twice the amount of actual damages under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(C), and/or the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426.3(c);

3. For punitive and exemplary damages according to proof on all claims for which such damages are recoverable;

4. For a temporary restraining order, preliminary injunction, and permanent injunction: (a) prohibiting Scheiman from using, disclosing, or disseminating any of Edward Don's trade secrets or Confidential Information; (b) requiring Scheiman to return all documents, files, and materials (whether physical or electronic) containing Edward Don's Confidential Information; (c) prohibiting Scheiman from soliciting or servicing the Project or any Edward Don client using misappropriated information; and (d) such other injunctive relief as the Court deems just and proper;

5. For an order requiring an accounting of all profits, benefits, and advantages derived by Scheiman and/or Sam Tell from the misappropriation of Edward Don's trade secrets and Confidential Information;

6. For restitution and disgorgement of all ill-gotten gains;

7. For reasonable attorney's fees and costs of suit pursuant to 18 U.S.C. § 1836(b)(3)(D), Cal. Civ. Code § 3426.4, and any other applicable statute or contractual provision;

8. For pre-judgment and post-judgment interest as permitted by law;

9. For costs of suit incurred herein; and

10. For such other and further relief as the Court deems just and proper.

/ / /

/ / /

/ / /

/ / /

**DEMAND FOR JURY TRIAL**

Edward Don & Company, LLC hereby demands a trial by jury on all issues so triable.

Dated: July 30, 2026

MAYNARD NEXSEN LLP

By: *_______/s/ Weixuan Cai________*
Thy B. Bui
Weixuan Cai
Attorneys for Defendant and Cross-Complainant
EDWARD DON & COMPANY, LLC