United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL SCHEIMAN,

Plaintiff,

v.

EDWARD DON & COMPANY, LLC, et al.,

Defendants.

Case No. 26-cv-00220-TSH

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS UNDER RULE 12(b)(6)**

Re: Dkt. No. 53

## I. INTRODUCTION

Plaintiff Michael Scheiman is a former sales executive who alleges Defendants Edward Don & Company, LLC ("Edward Don") and Sysco Corporation ("Sysco") (collectively, "Defendants") failed to pay him earned commissions and did not timely provide his personnel and payroll records. ECF No. 1-10. Pending before the Court is Scheiman's Motion to Dismiss Edward Don's Counterclaims under Federal Rule of Civil Procedure 12(b)(6). ECF No. 53 ("Mot."). The Court finds this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b) and **VACATES** the October 29, 2026, hearing. For the reasons stated below, the Court **GRANTS IN PART and DENIES IN PART** the motion.[1]

## II. BACKGROUND

### A. Factual Background

Scheiman, a California resident, began his employment with Myers Restaurant Supply ("Myers") in May 2013. First Am. Compl. ("FAC") ¶¶ 16, 19 (ECF No. 1-10). Edward Don is a

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 14, 19.

Delaware limited liability company headquartered in Illinois.[2] *Id.* ¶ 12. In 2022, Edward Don acquired Myers, integrating its operations, accounts, and personnel. *Id.* ¶ 19. Following this acquisition, Scheiman continued in the same role. *Id.*

Scheiman was assigned to Edward Don's Alameda, California location. *Id.* Edward Don is a commercial food-service equipment and supply distributor whose business includes designing commercial kitchens, supplying equipment and supplies, and providing project management services. *Id.* ¶ 20. As part of this model, Edward Don offers fee-based design services and then sells recommended equipment and supplies. *Id.*

Sysco, a Delaware corporation with a principal place of business in Texas, acquired Edward Don in October 2023. *Id.* ¶ 13.

**1. Scheiman's Allegations**

Scheiman alleges the following in the FAC. Scheiman worked as a sales executive from December 18, 2022, to December 23, 2024, creating client-specific designs that generated design fee revenue and facilitating subsequent equipment sales. *Id.* ¶ 2. His compensation structure, as set forth in an Employment Salesperson Agreement and Commission Plan Addendum, provided a 20% direct margin commission on equipment sales and a 10% direct margin commission on design revenue. *Id.* ¶ 22. On October 10, 2024, Edward Don's Vice President increased Scheiman's annual draw from $250,000 to $325,000. *Id.* ¶ 24. Scheiman's employment agreement provided that commissions on orders received before termination and shipped within 60 days remained payable, subject to a 120-day reconciliation period. *Id.* ¶ 7.

Defendants terminated Scheiman's employment on December 23, 2024. *Id.* ¶ 6. For orders received before his termination and shipped within 60 days thereafter, Scheiman earned

---

[2] Edward Don "is wholly owned by a sole member, Edward Don & Company Intermediate, LLC. Edward Don & Company Intermediate, LLC is wholly owned by a sole member, Edward Don & Company Holdings, LLC. Edward Don & Company Holdings, LLC is wholly owned by a sole member, Edward Don & Company Acquisition Holdings, LLC. Edward Don & Company Acquisition Holdings, LLC is wholly owned by a sole member, Sysco Holdings, LLC. Sysco Holdings, LLC is wholly owned by a sole member, Sysco Corporation. As Sysco Corporation is incorporated in Delaware and its principal place of business is in Texas Edward Don & Company, LLC is therefore a citizen of Delaware and Texas." Not. of Removal ¶ 16 (cleaned up) (ECF No. 1).

commissions totaling $359,000, comprised of $352,100 in project-based equipment sales commissions at a 20% direct margin rate and $6,900 in design fee commissions at a 10% direct margin rate. *Id.* ¶ 25. Defendants have not paid these amounts despite expiration of the 120-day reconciliation period. *Id.* ¶ 26.

On July 11, 2025, Scheiman requested his personnel file. *Id.* ¶ 30. Defendants sent a confidentiality agreement on August 12, Scheiman returned a signed agreement on August 18, and Defendants countersigned on August 29, indicating records would be provided the following week. *Id.* ¶¶ 31–33. Scheiman sent follow-up requests on September 11 and 12, 2025. *Id.* ¶ 34. On September 12, Defendants indicated they would share the records that same day and later followed up to indicate that a conflict would delay them until the following week. *Id.* ¶ 35. Scheiman sent additional requests on September 18, 2025, and October 1 and 2, 2025. *Id.* ¶¶ 36–38.

After Scheiman filed his Complaint, Defendants made an initial production of his personnel records on November 12, 2025, but it did not include wage statements or payroll records. *Id.* ¶ 40. Scheiman requested complete production that day, and Defendants produced the full personnel file on November 13, 2025. *Id.* ¶¶ 40–41.

**2. Edward Don's Allegations**

Edward Don alleges the following in the Counterclaims in its Amended Answer to the FAC. On December 18, 2022, Scheiman became employed by Edward Don as Myers Vice President Business Development & Design. Am. Answer at 19 (ECF No. 49). Scheiman was a point person for receiving project information and making pricing and pursuit decisions; he participated in internal meetings and strategy discussions, supervised sales personnel who reported to him, and helped create and execute the office's internal processes. *Id.* at 22. In his role, Scheiman had access to Edward Don's proprietary project information and materials and confidential competitive strategy which Edward Don maintained as trade secrets. *Id.* at 21–23. Scheiman had access to Edward Don's confidential information to a greater degree than ordinary sales personnel. *Id.* at 22. In his role as Vice President, Scheiman occupied a position of trust and confidence with Edward Don and owed Edward Don fiduciary duties. *Id.* at 32.

United States District Court
Northern District of California

In his employment agreement, Scheiman agreed not to disclose or use Edward Don's proprietary information during or after his employment except to carry out his duties with Edward Don. *Id.* at 22–23. Scheiman also agreed to return Edward Don's property, including price lists, sales manuals, emails, and computers, immediately at termination with no copies retained. *Id.* at 23.

Scheiman separated from Edward Don on December 20, 2024. *Id.* at 24–25. Scheiman became affiliated with The Sam Tell Companies ("Sam Tell"), a competitor of Edward Don, where Scheiman is a Managing Director. *Id.* at 19.

In April 2024, Edward Don worked on a substantial commercial foodservice equipment project (the "Project") for a customer valued at six figures. *Id.* at 20–21. Prior to leaving Edward Don, Scheiman negotiated and finalized his move to Sam Tell, coordinated with Sam Tell to recruit Edward Don employees, and planned with Sam Tell to disrupt Edward Don's Oakland operations and enable Sam Tell to compete for service projects that Edward Don had developed. *Id.* at 25. Scheiman encouraged Edward Don's clients to delay moving forward and wait until Scheiman began at Sam Tell. *Id.* Upon his departure, Scheiman failed to return Edward Don's confidential information; he deleted most of his emails and contacts from Edward Don, leaving minimal data behind. *Id.*

Within months of leaving Edward Don, Scheiman was involved in the same Project with Sam Tell. *Id.* at 26. In April 2025, Scheiman communicated with a Project representative concerning the same issues addressed in Edward Don's confidential design and build materials and redirected Project communications to Sam Tell personnel. *Id.* Scheiman used the same kitchen design after moving to Sam Tell that was developed while Scheiman was with Edward Don. *Id.* at 27. As a result of Scheiman's actions, Edward Don lost the Project and its associated profits. *Id.* at 32–34. In addition, Edward Don identified other projects formerly associated with Edward Don's book of business that may have been diverted to Sam Tell. *Id.* at 28.

**B. Procedural Background**

On October 16, 2025, Scheiman filed this action in Alameda Superior Court, Case No. 25CV149032, alleging one cause of action: Failure to Provide Personnel File in Violation of

California Labor Code § 1198.5. ECF No. 1-2 (“Compl.”). Scheiman sought, *inter alia*, injunctive relief requiring production of his personnel file and statutory penalties and fees. Compl. at 15.

On December 9, 2025, Scheiman filed the operative First Amended Complaint (“FAC”), alleging six causes of action: (1) Withholding of Wages in Violation of California Labor Code § 206; (2) Breach of Contract; (3) Unjust Enrichment; (4) Withholding of Wages in Violation of California Fundamental Public Policy; (5) Failure to Timely Provide Payroll Records in Violation of California Labor Code § 226; and (6) Failure to Timely Provide Personnel File in Violation of California Labor Code § 1198.5. FAC ¶¶ 42–77 (ECF No. 1-10). Scheiman seeks, *inter alia*, compensatory damages, statutory penalties, and treble damages. FAC at 11. Defendants removed the case to the Northern District of California on January 8, 2026. ECF No. 1 (“Not. of Removal”). Defendants allege the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Not. of Removal ¶ 20.

Defendants filed a motion to dismiss Scheiman’s claims on January 15, 2026. ECF No. 15. On February 27, 2026, the Court granted in part and denied in part the motion. ECF No. 27. The Court granted Defendant’s motion to dismiss Scheiman’s claims for Unjust Enrichment and Withholding of Wages in Violation of California Fundamental Public Policy. *Id.*

On March 13, 2026, Sysco filed an answer to the FAC. ECF No. 29. That day, Edward Don also filed an answer to the FAC. ECF No. 30. On August 25, 2026, Edward Don filed an Amended Answer and Counterclaims to the FAC. ECF No. 49 (“Am. Answer”). Edward Don alleges eight causes of action in its Counterclaims against Scheiman: (1) Misappropriation of Trade Secrets in Violation of Defend Trade Secrets Act (18 U.S.C. §§ 1836 et seq.); (2) Misappropriation of Trade Secrets in Violation of California Uniform Trade Secrets Act (Cal. Civ. Code §§ 3426 et seq.); (3) Breach of Duty of Loyalty; (4) Breach of Fiduciary Duty; (5) Conversion; (6) Unfair Competition (Cal. Bus. & Prof. Code §§ 17200 et seq.); (7) Intentional Interference with Prospective Economic Advantage; and (8) Breach of Contract/Confidentiality and Non-Disclosure Obligations. Am. Answer at 28–37. Edward Don seeks, *inter alia*, compensatory damages, punitive damages, and injunctive relief. *Id.* at 37–38.

On September 17, 2026, Scheiman filed the instant Motion to Dismiss Counterclaims under Federal Rule of Civil Procedure 12(b)(6). ECF No. 53 ("Mot."). Scheiman moves to dismiss four of Edward Don's Counterclaims. Mot. at 1. On October 1, 2026, Edward Don filed an Opposition. ECF No. 54 ("Opp."). On October 8, 2026, Scheiman filed a Reply. ECF No. 56 ("Reply").

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (cleaned up). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *accord Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up). A court "may exercise its discretion to deny leave to amend due to 'undue

United States District Court
Northern District of California

delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Courts have broader discretion in denying motions for leave to amend after leave to amend has already been granted. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) ("[W]hen the district court has already afforded a plaintiff an opportunity to amend the complaint, it has wide discretion in granting or refusing leave to amend after the first amendment, and only upon gross abuse will its rulings be disturbed.") (cleaned up); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad.") (cleaned up).

## IV. DISCUSSION

Scheiman moves to dismiss Edward Don's Counterclaims for Breach of Fiduciary Duty (Counterclaim 4), Conversion (Counterclaim 5), Unfair Competition (Counterclaim 6), and Intentional Interference with Prospective Economic Advantage (Counterclaim 7). Mot. at 1.

In sum, the Court concludes that Edward Don pleads cognizable claims for breach of fiduciary duty, unfair competition, and intentional interference with prospective economic advantage. Therefore, dismissal of Counterclaims 4, 6, and 7 is not warranted. However, the Court concludes that Edward Don fails to plead a cognizable claim for conversion. Therefore, dismissal of Counterclaim 5 is warranted.

### A. Breach Of Fiduciary Duty Counterclaim

Edward Don alleges that Scheiman breached his fiduciary duties to Edward Don by misappropriating Edward Don's trade secrets, coordinating with Sam Tell to recruit Edward Don employees, directing Edward Don clients to delay moving forward, and acting for a competitor's benefit by diverting the Project and other opportunities to Sam Tell. Am. Answer at 32. Scheiman argues that Edward Don's counterclaim for breach of fiduciary duty fails because (1) the claim is superseded by the California Uniform Trade Secrets Act ("CUTSA"); (2) Scheiman was not a fiduciary as a matter of law; and (3) the claim is duplicative. Mot. at 5:1–6:21.

Here, as discussed below, the Court concludes that Edward Don pleads a cognizable counterclaim for breach of fiduciary duty.

Accordingly, the Court **DENIES** Scheiman's motion to dismiss Edward Don's counterclaim for breach of fiduciary duty.

**1. CUTSA Supersession**

The parties disagree on whether CUTSA supersedes the breach of fiduciary duty counterclaim. CUTSA's "breadth suggests a legislative intent to preempt the common law." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954 (2009). CUTSA's supersession provision states, in pertinent part:

> (a) Except as otherwise expressly provided, this title does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.
>
> (b) This title does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret.

Cal. Civ. Code § 3426.7(a), (b). As such, the statute "implicitly preempts alternative civil remedies based on trade secret misappropriation." *K.C. Multimedia*, 171 Cal. App. 4th at 954 (citation omitted). "[T]he determination of whether a claim is based on trade secret misappropriation is largely factual." *Id.* At bottom, CUTSA supersedes those claims which "are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief." *Id.* at 955 (quoting *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)). But claims that "allege wrongdoing that is materially distinct from the wrongdoing alleged in a CUTSA claim" avoid supersession. *Beluca Ventures LLC v. Einride Aktiebolag*, 660 F. Supp. 3d 898, 912 (N.D. Cal. 2023).

Here, Scheiman argues that the gravamen of the breach of fiduciary duty counterclaim "is the same trade secret misappropriation that CUTSA is designed to address." Mot. at 6:9–14. Edward Don contends that the claim "is not confined to misuse of confidential information." Opp. at 9:26–10:12. "CUTSA doesn't preempt claims for breach of fiduciary duty unless the alleged breach is based on the same nucleus of facts as the trade secret misappropriation claim." *Beluca*,

660 F. Supp. 3d at 913 (cleaned up). The Court agrees with Edward Don that Scheiman's alleged breach is based on conduct independent from trade secret misappropriation: Scheiman's actions for a competitor's benefit consisting of coordination with Sam Tell to recruit Edward Don employees, planning with Sam Tell to disrupt Edward Don's Oakland operations, and directing Edward Don's clients to delay moving forward and wait until Scheiman began at Sam Tell. Opp. at 10:7–12; Am. Answer at 25. Therefore, CUTSA does not supersede the breach of fiduciary duty counterclaim. *Contra Beluca*, 660 F. Supp. 3d at 914 (concluding CUTSA supersedes claim for breach of fiduciary duty because claim is exclusively based on "alleged wrongful disclosure of 'confidential information'").

**2. Sufficiency of Counterclaim**

Scheiman argues that Edward Don does not establish that Scheiman was a fiduciary because a "sales-side VP title, access to project information, and customer-facing responsibilities do not amount to participation in management of the corporation as California law requires." Mot. at 5:1–6:8. Edward Don contends that its allegations establish Scheiman's fiduciary status under controlling California law. Opp. at 8:1–9:25.

Under California law, "[t]he elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach." *Knox v. Dean*, 205 Cal. App. 4th 417, 432 (2012) (citation omitted). "Whether a fiduciary duty exists is generally a question of law. Whether the defendant breached that duty towards the plaintiff is a question of fact." *Marzec v. California Pub. Emps. Ret. Sys.*, 236 Cal. App. 4th 889, 915 (2015) (emphasis omitted) (cleaned up).

"In determining the existence of an employee's fiduciary duty arising by operation of law, what matters is not one's title, but rather the levels of trust, confidence, and discretion reposed by the employer." *Guild Mortg. Co. LLC v. CrossCountry Mortg. LLC*, 120 Cal. App. 5th 885, 895 (2026). In sum, "the test for fiduciary status is not control; it is, instead, merely participation in management." *Id.* (citation omitted). Whether a particular employee participates in management is a question of fact. *Id.*

Here, the Court concludes that Edward Don plausibly alleges that Scheiman owed Edward

Don fiduciary duties. Scheiman cites no legal authority for the proposition that Edward Don must allege "Scheiman was a corporate officer or director, held equity in the company, had authority to bind Edward Don, or exercised independent discretionary control over corporate affairs." Mot. at 5:23–26; *see* Opp. at 8:25–9:5. Instead, the question is whether Edward Don sufficiently alleges that Scheiman participated in management. *Guild*, 120 Cal. App. 5th at 895. Edward Don alleges that as Vice President, Scheiman was a point person for receiving project information, made pricing and pursuit decisions, participated in internal meetings and strategy discussions, supervised sales personnel who reported to him, helped create and execute the office's internal processes, and had access to Edward Don's confidential information to a greater degree than ordinary sales personnel. Opp. at 8:16–24; Am. Answer at 19, 21–23, 32. At this stage, the Court cannot say that Scheiman was not a fiduciary as a matter of law. Scheiman asserts that his alleged responsibilities mirror that of a "senior salesperson at a regional office" and not management. Reply at 6:5–28. However, whether Scheiman's alleged duties are tantamount to participation in Edward Don's management is a question of fact. *Guild*, 120 Cal. App. 5th at 895. In short, Edward Don's allegations meet the low threshold at the pleadings stage to show that Scheiman participated in Edward Don's management. *Cf. id.* (concluding allegations that branch manager oversaw dozens of employees and was entrusted to safeguard the confidentiality of sensitive financial information plausibly establish existence of fiduciary duty).

Finally, Scheiman argues unpersuasively that the breach of fiduciary duty counterclaim fails as redundant of the breach of the duty of loyalty counterclaim. Mot. at 6:15–21. "Although they are similar, breach of fiduciary duty and breach of the duty of loyalty are two distinct claims under California law." *E.D.C. Techs., Inc. v. Seidel*, 216 F. Supp. 3d 1012, 1016 (N.D. Cal. 2016) (citation omitted); *see* Opp. at 10:13–22. Thus, as a matter of law, Edward Don may plead both causes of action. Scheiman tacitly concedes the point; in his Reply, he pivots to an argument that the breach of fiduciary duty counterclaim adds nothing because it fails to plead Scheiman owed fiduciary duties. Reply at 7:12–24. But as discussed, the Court disagrees. Therefore, Edward Don plausibly alleges a breach of fiduciary duty counterclaim.

United States District Court
Northern District of California

**B. Conversion Counterclaim**

Edward Don alleges that Scheiman exercised unauthorized control over Edward Don's confidential information by using and failing to return the information without making copies at termination and that Scheiman made the information available to Sam Tell. Am. Answer at 33. Scheiman argues that Edward Don's counterclaim for conversion fails because (1) CUTSA supersedes the claim; and (2) Edward Don fails to plausibly plead all elements of conversion. Mot. at 3:9–4:26.

Under California law, the tort of conversion "comprises three elements: (a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages." *Voris v. Lampert*, 7 Cal. 5th 1141, 1150 (2019) (cleaned up). "[I]n California, conversion is a strict liability tort." *Id.* (cleaned up). CUTSA supersedes conversion claims that are based on the existence of a trade secret. *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 508 (2013).

Here, the Court concludes that Edward Don fails to show that the conversion counterclaim is based on conduct independent from trade secret misappropriation. Scheiman argues that the "gravamen of the conversion claim is trade secret misappropriation." Mot. at 3:10–4:7. The Court agrees. Edward Don alleges that upon his departure from Edward Don, Scheiman "took, retained, deleted, concealed, and/or failed to return Edward Don's Confidential Information." Am. Answer at 25. "Confidential Information" is defined as trade secrets. *Id.* at 23. Contrary to Edward Don's assertion, it does not plead "the taking of tangible property that was not a trade secret." Opp. at 6:3–16. While Edward Don alleges the employment agreement requires Scheiman to return all company materials upon termination, Edward Don does not allege that Scheiman failed to return materials that are not trade secrets. Reply at 4:3–13. Therefore, as pleaded, CUTSA supersedes the conversion counterclaim.

Edward Don further contends that Scheiman's "duty to surrender Edward Don's property arose from ownership, possession, and contract, not from trade secret misappropriation alone." Opp. at 5:24–6:24. To be sure, "breach of contract claims, even when they are based on misappropriation or misuse of a trade secret, are not displaced by UTSA." *Angelica*, 220 Cal.

App. 4th at 508. But conversion is a tort. *Voris*, 7 Cal. 5th at 1150. As such, conversion does not fall within CUTSA's carveout for contractual claims. Reply at 2:23–3:14. Indeed, Edward Don brings a breach of contract counterclaim premised on Scheiman's failure to return Edward Don's confidential information, in violation of the employment agreement, which Scheiman does not challenge under CUTSA. Am. Answer at 36–37.

Accordingly, the Court **GRANTS** Scheiman's motion to dismiss Edward Don's counterclaim for conversion. Edward Don requests that it be given leave to amend if the Court finds any allegation insufficient. Opp. at 14. Because it is not clear that the deficiencies of the conversion counterclaim could not be cured by amendment, the Court **GRANTS** Edward Don the opportunity to file an amended counterclaim.

### C. Unfair Competition Counterclaim

Edward Don alleges that Scheiman's conduct was unlawful because it violates trade secret statutes and that his conduct was unfair because he misappropriated trade secrets, and breached his duties to Edward Don by recruiting employees, diverting business opportunities, and directing clients to delay work with Edward Don. Am. Answer at 34. Scheiman argues that Edward Don's counterclaim for unfair competition fails because (1) CUTSA supersedes the claim; and (2) the claim is wholly derivative and provides no independent basis for relief. Mot. at 6:22–7:18.

Under the UCL, any person or entity that has engaged, is engaging, or threatens to engage "in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code § 17203. The UCL's "purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 320 (2011). "Unfair competition" includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Each prong of the UCL is a separate and distinct theory of liability. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). The UCL's coverage is "sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (cleaned up).

Here, as discussed below, the Court concludes that Edward Don pleads a cognizable counterclaim for unfair competition.

Accordingly, the Court **DENIES** Scheiman's motion to dismiss Edward Don's counterclaim for unfair competition.

**1. CUTSA Supersession**

Scheiman argues that the UCL counterclaim "incorporates all preceding allegations and rests on the same conduct as the trade secret claims." Mot. at 6:23–7:9. Edward Don contends that Scheiman's "alleged conduct provides a completely independent basis for unfair competition that does not require proving trade secret misappropriation." Opp. at 10:25–11:18.

CUTSA does not supersede an unfair competition claim where the theory of liability is independent of any trade secret claim. *Angelica*, 220 Cal. App. 4th at 508.

Here, the Court concludes that the UCL counterclaim is based on conduct independent from trade secret misappropriation. Scheiman concedes that Edward Don alleges breach of loyalty, diversion of business opportunities, and recruitment as conduct violating the "unfair" prong of the UCL that is separate from trade secret misappropriation. Mot. at 7:4–18; Opp. at 11:5–12:2. That ends the CUTSA inquiry. *See Angelica*, 220 Cal. App. 4th at 508 (concluding UCL claim premised on "[defendant's] wrongful conduct in violating the noncompetition agreement and violating his duty of loyalty to [plaintiff]" not superseded by CUTSA). Therefore, at a minimum, CUTSA does not supersede the UCL counterclaim as far as it is predicated on the UCL's unfair prong.

**2. Sufficiency Of Counterclaim**

Scheiman argues that the UCL counterclaim fails because it "borrows its predicate wrongdoing entirely from other causes of action" and "provides no independent basis for relief." Mot. at 7:10–18. Edward Don contends that the claim "provides an independent statutory basis to authorize distinct remedies." Opp. at 11:19–12:2.

"Section 17200 'borrows' violations from other laws by making them independently actionable as unfair competitive practices." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003) (citation omitted).

Here, the Court concludes that Edward Don plausibly pleads a cause of action under the UCL. Scheiman concedes that the UCL counterclaim rises and falls with Edward Don's other counterclaims not superseded by CUTSA. Reply at 8:4–22. Therefore, because Edward Don's other causes of action survive dismissal, so too does its cause of action under the UCL. *See, e.g., Angelica*, 220 Cal. App. 4th at 508 (permitting UCL claim premised on breach of duty of loyalty).

**D. Intentional Interference With Prospective Economic Advantage Counterclaim**

Edward Don alleges that Scheiman interfered with Edward Don's prospective economic advantage by misappropriating trade secrets, recruiting employees, directing Project communications to Sam Tell, diverting business opportunities, directing clients to delay work with Edward Don, and inserting himself and Sam Tell into Edward Don's existing client relationship on the Project. Am. Answer at 35–36. Scheiman argues that Edward Don's counterclaim for intentional interference with prospective economic advantage ("IIPEA") fails because (1) CUTSA supersedes the claim; and (2) Edward Don fails to plead actual disruption. Mot. at 7:19–9:4.

Here, as discussed below, the Court concludes that Edward Don pleads a cognizable counterclaim for intentional interference with prospective economic advantage.

Accordingly, the Court **DENIES** Scheiman's motion to dismiss Edward Don's counterclaim for intentional interference with prospective economic advantage.

**1. CUTSA Supersession**

Scheiman argues that the IIPEA counterclaim "is predicated on the same alleged misappropriation of confidential information" as the trade secrets claims. Mot. at 8:21–9:4. Edward Don contends that the "inclusion of misappropriation as one predicate among several does not permit CUTSA to eliminate the entire claim." Opp. at 13:14–24.

CUTSA does not supersede an IIPEA claim where the theory of liability is independent of any trade secret claim. *Angelica*, 220 Cal. App. 4th at 508.

Here, the Court concludes that the IIPEA counterclaim is based on conduct independent from trade secret misappropriation. Similar to its other counterclaims, Edward Don alleges trade secret misappropriation as one predicate among several underlying the IIPEA counterclaim. Opp. at 13:14–24. Scheiman responds that the other predicate counterclaims also fail. Reply at 9:28–



United States District Court
Northern District of California

10:3. Not so. Therefore, CUTSA does not supersede the IIPEA counterclaim. *Contra K.C. Multimedia*, 171 Cal. App. 4th at 960 (concluding CUTSA supersedes tortious interference with contract claim resting on same legal and factual basis as trade secret misappropriation claim).

**2. Sufficiency Of Counterclaim**

Scheiman argues that the IIPEA counterclaim fails because Edward Don's allegations regarding actual disruption are speculative and conclusory. Mot. at 7:21–8:20. Edward Don contends that the allegations plausibly identify a concrete, existing relationship with an identifiable customer and specific acts of interference that resulted in loss. Opp. at 12:6–13:13.

In California, an IIPEA claim comprises five elements: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply*, 29 Cal. 4th at 1153 (cleaned up).

Here, the Court concludes that Edward Don sufficiently alleges actual disruption. Scheiman complains that Edward Don "does not plead that it actually lost the Project or that its relationship with the customer was in fact disrupted." Mot. at 8:18–19. That is incorrect. Edward Don "alleges loss of the Project and associated profits as damages from Scheiman's conduct." Opp. at 12:22–24 (citing Am. Answer at 32–34). That is all that is required. *See Korea Supply*, 29 Cal. 4th at 1165 (concluding plaintiff sufficiently pleaded actual disruption in alleging it did not receive its expected commission because contractor was not awarded a contract). Scheiman's argument that the IIPEA counterclaim fails because Edward Don alleges it "lost or was placed at substantial risk of losing the Project and associated profits" in that cause of action is unavailing. Reply at 8:23–9:2 (citing Am. Answer at 36). The IIPEA cause of action incorporates all other allegations in the Counterclaim. Am. Answer at 35. Read as a whole, in the light most favorable to Edward Don, the Court agrees that Edward Don's allegations—that Scheiman encouraged Edward Don's clients to delay moving forward, redirected Project communications to Sam Tell personnel, and used Edward Don's confidential information for the Project while at Sam Tell, and

United States District Court
Northern District of California

that Edward Don then lost the Project—establish that Edward Don suffered actual disruption of its economic relationship with its client. Opp. at 12:15–24. Therefore, Edward Don plausibly alleges an IIPEA counterclaim.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART and DENIES IN PART** Scheiman's Motion to Dismiss Counterclaims. Edward Don may file an amended counterclaim within fourteen days of this order.

**IT IS SO ORDERED.**

Dated: October 21, 2026



THOMAS S. HIXSON
United States Magistrate Judge